IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

PHILOS TECHNOLOGIES, INC.,      )
                                )
            Plaintiff,          )
                                )      No. 08 C 7240
                                )
     v.                         )
                                )
PHILOS & D, INC., et al.,       )
                                )
            Defendants.         )

## MEMORANDUM OPINION AND ORDER

This Court's September 25, 2012 Findings of Fact and
Conclusions of Law ("Findings and Conclusions," Dkt. 116)
culminated in the dismissal of this action for lack of personal
jurisdiction.  What still remains is the motion of Philos & D,
Don-Hee Park and Jaehee Park (collectively "Philos & D") for
sanctions against plaintiff Philos Technologies, Inc. ("Philos
Tech") and each of Philos Tech's attorneys (collectively the
"Attorneys").  For the reasons stated hereafter, Philos & D's
motion is granted as against Philos Tech but denied as applied to
the Attorneys.

### Standard of Review

Philos & D's first claimed source of sanctions--Fed. R. Civ.
P. ("Rule") 11(b)--requires attorneys to certify that any given
submission to the court (1) was not submitted for an improper
purpose, (2) is supported by existing law or a nonfrivolous
argument for extending or altering existing law and (3) relies on

factual contentions that have evidentiary support.  Included in those dictates is the obligation of attorneys to conduct an objectively reasonable investigation into the underlying facts or law of a given submission to insure that those characteristics are satisfied (Gottlieb v. Westin Hotel Co., 990 F.2d 323, 327 (7th Cir. 1993)).  If a submission fails to meet those standards, a court is permitted to sanction the attorney who filed that submission (Rule 11(c)(1)).

All of that said, there is no need to update old pleadings and submissions if they were not sanctionable at the time they were filed.  Instead courts must look only to the potential liability for what the lawyers knew or reasonably should have known at the time of the submission (Pantry Queen Foods, Inc. v. Lifschultz Fast Freight, Inc., 809 F.2d 451, 454 (7th Cir. 1987)).  As more is discovered, however, a party or attorney cannot continue to advocate a claim that lacks a legal or factual basis (Fabriko Acquisition Corp. v. Prokos, 536 F.3d 605, 610 (7th Cir. 2008)).  If a sanction is warranted, it must be limited to what is necessary to deter future Rule 11 violations (Rule 11(c)(4)).

Philos & D also requests sanctions under 28 U.S.C. §1927 ("Section 1927"), which provides district courts with the discretion to hold an attorney--though not a party--liable for the attorney's fees and expenses of the opposing party if that

attorney "multiplies the proceedings in any case unreasonably and vexatiously."  For the purposes of Section 1927, an attorney multiplies proceedings "vexatiously" if he or she acts with subjective or objective bad faith (Dal Pozzo v. Basic Mach. Co., 463 F.3d 609, 614 (7th Cir. 2006)).  Objective bad faith need not be predicated on a finding of malice or ill will--instead reckless indifference to the law will suffice (id.).  As Dal Pozzo, 463 F.3d at 614 (internal quotation marks and citation omitted) teaches, that standard is met by "pursu[ing] a path that a reasonably careful attorney would have known, after appropriate inquiry, to be unsound."  Alternatively, if an objectively colorable basis for an attorney's conduct does exist, his or her actions can still be considered vexatious and unreasonable through a showing of subjective bad faith (id.).  As with Rule 11, Section 1927 requires attorneys to dismiss claims that are no longer viable (Jolly Group, Ltd. v. Medline Indus., Inc., 435 F.3d 717, 720 (7th Cir. 2006)).

## Background

Here the detailed Findings and Conclusions[1] provide a rich

---

[1]  Those Findings and Conclusions will be cited "F. ¶--" for findings of fact and "C. ¶--" for conclusions of law.  Defendant Philos & D's memorandum supporting its motion will be cited "D. Mem. ¶--," plaintiff Philos Tech's memorandum opposing the motion will be cited "P. Mem. ¶--" and Philos Tech's supplemental memorandum will be cited "P. Supp. Mem. ¶--."  Citations to exhibits attached to those submissions will add the suffix "Ex. --" to its corresponding document.

source of all the information needed to decide the current dispute. What follows in this section instead is an abbreviated version of the facts relevant to the present motion.

PLS Tech Korea ("PLS Tech") is a South Korean company, founded by Jong Ho Philos Ko ("J. Ko"), that specializes in heat treatment technology (F. ¶1). On December 20, 2007 Don-Hee and Jaehee Park (referred to singularly by their first names and collectively as "the Parks") entered into two written agreements (the "Agreements") with PLS Tech to establish a company--Philos & D--to manufacture and sell knives and shears using a particular type of surface treatment technology (F. ¶¶3-6). Their first agreement ("Joint Venture Agreement") established the joint venture between the Parks and PLS Tech, while the second agreement ("Equipment Agreement") explained that PLS Tech would provide Philos & D with the surface treatment equipment ("Equipment")(F. ¶6). Notably the Equipment Agreement contained an integration clause specifying that it could be modified only in writing (F. ¶7). Fully eight months later (on August 18, 2008) J. Ko sent Philos & D a letter on behalf of PLS Tech unilaterally purporting to cancel both the Joint Venture Agreement and the Equipment Agreement (F. ¶17[2]).

---

[2] Although F. ¶17 mistakenly refers to that cancellation date as April 18, 2008, P. Mem. Ex. 1 ¶8 makes it clear that August 18, 2008 is indeed the correct date on which the cancellation letter was sent.

S. Ko--J. Ko's son and the sole shareholder in and President
of Illinois company Philos Tech--was not present at the signing
of the Agreements, nor was Philos Tech a party to those
Agreements (F. ¶11). Nonetheless S. Ko brought suit on behalf of
Philos Tech against Philos & D and the Parks in this Northern
District of Illinois in December 2008. In Philos Tech's
Complaint S. Ko alleged that it was Philos Tech and not PLS Tech
that entered into a joint venture with the Parks on December 20,
2007 (Dkt. 1 ¶15). Indeed, the Complaint did not even mention
the existence of PLS Tech, nor did it mention the Agreements (see
generally Dkt. 1). Attorney David Lesht filed the Complaint, and
he was assisted by Panasarn Aim Jirut (Dkt. 1). Both attorneys
claim that they were unaware of the existence of the Agreements
when they filed the Complaint.

Instead of appearing to defend against Philos Tech's suit,
the Parks (and by extension Philos & D) sent a February 13, 2009
letter to the court[3] disclaiming the existence of personal
jurisdiction in this District to hear the case (Dkt. 11). In
that letter the Parks informed the court of the existence of the
Agreements and asserted that they had no agreement at all with
Philos Tech (id.). Shortly after the Parks' letter was sent,

---

[3]  This action was originally assigned at random to the
calendar of this Court's colleague and friend Honorable William
Hibbler. It was reassigned to this Court's calendar (again at
random) following Judge Hibbler's untimely death.

attorneys Thomas Vickers and Jeffrey Moran joined in prosecuting S. Ko's case (Dkt. 13-14).

Because the Parks refused to appear, Philos Tech filed a motion for default judgment, which was granted by Judge Hibbler based on S. Ko's allegations (Dkt. 25). Philos & D responded by filing a motion to vacate the default judgment, arguing a lack of personal jurisdiction, in response to which Philos Tech argued for the first time that the Agreements had been rescinded orally--and contemporaneously with their execution!!--in favor of an agreement between Philos Tech and Philos & D (Dkt. 39 at 8-9). Judge Hibbler denied Philos & D's motion to vacate the judgment as untimely, but our Court of Appeals then reversed that ruling, holding that Philos & D's method of challenging personal jurisdiction was acceptable (see generally <u>Philos Tech. v. Philos & D</u>, 645 F.3d 851 (7th Cir. 2011)). Rather than passing upon the factual issues tied to personal jurisdiction in the first instance, the Court of Appeals remanded the case to the District Court to do so (<u>id</u>. at 859).

When the case returned to the District Court, Philos & D resubmitted its motion to vacate, and it also sent the Attorneys a Rule 11 letter, warning them that Philos & D would seek sanctions if Philos Tech did not withdraw the Complaint (D. Mem. Ex. 5). Philos & D asserted that the bases for sanctions were the "material misrepresentations and omissions" contained in the

Complaint and readvanced through later pleadings, which falsely supported personal jurisdiction in this District (id.). In response Philos Tech insisted that the Agreements were provisional in nature, that the controlling agreement was between Philos & D and Philos Tech and that Philos Tech had a "textbook" conversion claim (D. Mem. Ex. 6). Accordingly Philos Tech refused to drop the Complaint (id.).

After the case was transferred to this Court, it held an evidentiary hearing to determine whether this District Court had personal jurisdiction over Philos & D. During that hearing this Court found S. Ko's testimony to be incredible and found that the purported "oral rescission" of the Agreements never took place (F. ¶¶12-16, 30). Instead this Court found that Philos Tech merely helped to carry out PLS Tech's contractual obligations under the Agreements by providing the Equipment described in the Equipment Agreement (id. at ¶8 n.4). As for Philos Tech's evidence suggesting that it had a joint venture with the Parks, including Philos & D's Articles of Incorporation and business plan, this Court found that such documents instead implemented the relevant actors' scam to receive South Korean benefits for assertedly having a foreign investor (id. ¶¶33-39).

Finally this Court determined that even if S. Ko's story had been true (as it was not), two facts would still prevent recovery. First, the Equipment Agreement expressly precluded any

oral modification (a preclusion that would of course bar a purported oral rescission)(F. ¶7). Second, even if the Agreements could have been rescinded orally, the best that S. Ko could hope for would be a breach of contract claim, not a claim for conversion--and this District Court would not have personal jurisdiction over the defendants for such a simple contract claim (C. ¶¶6-7).

In light of all the Findings and Conclusions, this Court granted Philos & D's motion to vacate and dismissed the action for lack of personal jurisdiction. Shortly thereafter Philos & D filed the present motion, to which this Court now turns.

## Rule 11 and Philos Tech

Philos & D maintains that Philos Tech and the Attorneys violated Rule 11 and that the Attorneys also violated Section 1927, so that both should be held liable for sanctions, because of a lack of both factual and legal bases for Philos Tech's claim. Those contentions and both targets' responses to them will be dealt with below, but first a few introductory points must be made clear.

First, although the parties do not speak to this issue, it is necessary to explain when a represented party such as Philos Tech may be sanctioned under Rule 11 at all. After all, by its literal terms Rule 11(b) imposes a duty only on attorneys and unrepresented parties, so it is not immediately clear how a

represented party could run afoul of its dictates.  But in that
regard Rule 11(c)(5)(A) explains that represented parties cannot
be sanctioned in monetary terms for violations of Rule
11(b)(2)--that is, for nonfrivolous <u>legal</u> arguments--at least
implying that represented parties <u>can</u> be sanctioned under the
remainder of Rule 11(b).  That implication is fortified by
reference to the Advisory Committee's notes to the 1993 amendment
to Rule 11 (the "Advisory Notes"), which state in part (emphasis
added):

> The sanction should be imposed on the persons--whether
> attorneys, law firms, or parties--who have violated the
> rule <u>or who may be determined to be responsible for the
> violation</u>.

Hence a represented party can be sanctioned monetarily if he, she
or it is held to have caused a Rule 11 violation, unless the
violation is legal in nature so as to come within
Rule 11(c)(5)(A)(see also Gregory Joseph, <u>Sanctions:  The Federal
Law of Litigation Abuse</u> §16(B)(17) at 2-267 to 2-268 (4th ed.
2008), hereafter cited as "Joseph, <u>Sanctions</u> §--").

Those Advisory Notes are also a helpful guide in determining
when a fee-shifting award of attorney's fees and expenses--the
sanction sought in the present motion--is appropriate under
Rule 11.  As the Advisory Notes explain, Rule 11 monetary
sanctions are ordinarily directed to be paid to the court, but
there are "unusual circumstances" under which Rule 11's goal of
deterrence cannot be accomplished without compensatory sanctions

in the form of an award of attorney's fees and expenses. Just such "unusual circumstances" are most likely to be created by violations of Rule 11(b)(1)--the prohibition against submissions with an improper purpose (see Advisory Notes to Rule 11), whether such violations are caused by an attorney or a party or both (see also Joseph, <u>Sanctions</u> §16(B)(17)(a) and (b). Thus in determining whether or not Philos & D's requested sanction of an award of attorney's fees and expenses should be granted, this opinion will look to whether such compensation will serve Rule 11's deterrent purposes, focusing particularly on whether Philos Tech or the Attorneys or both acted with an improper purpose.

With those introductory issues clarified, this opinion turns first to the Rule 11 portion of Philos & D's motion as applicable to Philos Tech. Before discussing the merits of that motion, though, this Court must consider Philos Tech's argument that Rule 11 sanctions should be barred on procedural grounds.

Philos Tech's first procedural argument is that Philos & D's motion for Rule 11 sanctions was untimely. Rule 11(c)(2) contains a safe harbor provision, which requires that a Rule 11 movant either send a warning letter or serve a copy of the Rule 11 motion 21 days before actually filing the motion (see <u>Matrix IV, Inc. v. Am. Nat'l Bank & Trust Co.</u>, 649 F.3d 539, 552 (7th Cir. 2011)). There is no question that Philos & D's Rule 11

motion was not filed too early, for its warning letter preceded the filing of the current motion by almost a year (see D. Mem. Ex. 5 and Dkt. 127). As Philos Tech points out, however, a Rule 11 motion can also be filed too late. Ninety days after final judgment is the "outer parameter" for filing a Rule 11 motion for sanctions (Matrix IV, 649 F.3d at 553), but according to Kaplan v. Zenner, 956 F.2d 149, 151-52 (7th Cir. 1992) filing a Rule 11 motion within that 90-day time frame does not guarantee timeliness. Kaplan, 956 F.2d at 151 held that a Rule 11 motion for sanctions brought within the 90-day window will still be denied as untimely if it was not filed "as soon as practicable after discovery of a Rule 11 violation" (see also Sullivan v. Hunt, 350 F.3d 664, 666 (7th Cir. 2003)).

Under Kaplan, 956 F.2d at 152 the reasonableness of a Rule 11 motion's timing is necessarily a fact-specific inquiry. In Kaplan, id. at 150-51 one of several defendants waited to file a Rule 11 motion until final judgment was entered, despite the fact that he had been dismissed from the case nearly two years earlier, and the court held that the two year delay could be grounds for denial based on a lack of timeliness (id. at 152).

In Matrix IV, 649 F.3d at 552-53, however, a Rule 11 motion was deemed timely despite a more-than-two-year gap between a Rule 11 notice letter and the filing of a motion. Notably that gap was filled by litigation over the defendant's motion to dismiss.

_Matrix IV_, 649 F.3d at 552-53 reasoned that "[t]he 21-day window specified in Rule 11 is a floor, not a ceiling" and that "[p]ostjudgment motions for sanctions are permissible so long as the moving party substantially complies with Rule 11's safe-harbor requirements." _Matrix IV_, 649 F.3d at 553 does acknowledge that a Rule 11 motion could be filed too late, but it refers only to the 90-day "outer parameter" and not to _Kaplan_'s "as soon as practicable" test (despite _Matrix IV_'s citation of _Sullivan_, 350 F.3d at 666, which does acknowledge _Kaplan_ and its reasonableness test).

Although it may be difficult to square _Matrix IV_'s strong language with _Kaplan_'s reasonableness test, it should be emphasized that _Kaplan_ preceded _Matrix IV_ by almost two decades--so this Court regards the latter case as the most recent emanating from our Court of Appeals and hence as carrying the most weight. But in all events, even if those two cases differ only factually, the present case is clearly of the _Matrix IV_--and not the _Kaplan_--variety. Philos & D's Rule 11 motion was filed nearly four years after the filing of the Complaint, but for roughly a year and a half of that time Philos & D was exercising its right not to appear in protest of personal jurisdiction. As for the remaining gap, it was understandably occupied by Philos & D's attempt to vacate the default judgment that had been improperly levied against it. Just over a month after that

effort succeeded, however, Philos & D filed the current motion. Thus as in <u>Matrix IV</u> and unlike <u>Kaplan</u>, the time between the alleged Rule 11 violation and the filing of the current motion was filled by Philos & D's litigation activity.  Its Rule 11 motion is unquestionably timely.

Philos Tech's second procedural challenge questions the sufficiency of Philos & D's Rule 11 notice letter.  Philos Tech correctly asserts that notice letters must outline the specific conduct that is allegedly violative of Rule 11 (see <u>Matrix IV</u>, 649 F.3d at 552 n.5).  Philos Tech claims that the warning letter here questioned only the truthfulness of Philos Tech's jurisdictional facts and made no mention of the conversion claim's lack of legal and factual bases.

Philos Tech is correct on the legal-basis front, as the letter makes no mention of any legal flaws.  Rule 11 sanctions may therefore not be applied based on Philos Tech's legal shortcomings.[4]  As to the letter's alleged failure to warn of factual deficiencies, though, Philos & D has by far the better of it.  Its counsel's letter explicitly states that "your Complaint contains multiple material misrepresentations and omissions directly relevant to the jurisdictional questions pending before

---

[4]  As previously noted, Section 1927 sanctions could still be levied against the Attorneys for a lack of legal bases for their submissions, because Section 1927 does not require a warning shot across the nonmovant's bow.

Judge Hibbler" (D. Mem. Ex. 5).  That the letter challenged only jurisdictional facts is unimportant, for Rule 11 sanctions would be prudently granted even if Philos Tech falsified or mischaracterized facts strictly to bolster its support of personal jurisdiction (cf. TMF Tool Co. v. Muller, 913 F.2d 1185, 1187-88 (7th Cir. 1990)).[5]  This opinion turns, then, to whether Philos Tech itself should be sanctioned under Rule 11 for factual falsification or misrepresentation.

Given the Findings and Conclusions, Rule 11 sanctions are clearly warranted against Philos Tech.  As already stated, the Complaint falsely claimed that Philos Tech had a "meeting" with the Parks and contracted with them to form a joint venture--a position advanced to support--again falsely--a predicate for in personam jurisdiction over them.  When confronted with the written Agreements to which Philos Tech was not a party, it claimed that those Agreements were rescinded through an oral agreement on the very day they were executed (F. ¶12), and it acknowledged that S. Ko's claimed "meeting" with the Parks was actually a telephone conversation (D. Mem. Ex. 2 at 264-65). Those factual retreats, seriously damaging to S. Ko's credibility, could alone have been enough to find that no such

_____

[5]  It should be noted, however, that the challenged facts were advanced to support both personal jurisdiction and Philos Tech's substantive claim, so that to challenge one is to challenge both.

- 14 -

oral agreement canceling the simultaneously-executed written Agreements was ever arrived at, but there was more evidence confirmatory of S. Ko's false testimony as well.

For instance, J. Ko's August 2008 letter to the Parks on behalf of PLS Tech, stating that it was canceling the Agreements with Philos & D, is 180° out of phase with S. Ko's version that those Agreements had already been cancelled orally months earlier.  In addition, the Findings and Conclusions document evidence reflecting that all of the relevant parties--plaintiffs, defendants and J. Ko--joined in arranging sham transactions to make it look as though Philos & D had a foreign investor in Philos Tech, which explains why Philos Tech is listed on Philos & D's Articles of Incorporation, business plan and foreign direct investment papers (F. ¶¶33-39).  Perhaps most telling is the fact that the Complaint failed to even mention the clearly relevant Agreements--an indication that S. Ko was bent on obfuscation from the very start.[6]

So the long and short of it is that Philos Tech fabricated a story about an oral agreement that supposedly superseded the

---

[6]  It should be emphasized that this Court is expressing no views as to the legal effect of the transactions and relationships among the parties--those matters will be for a court having jurisdiction over them to resolve.  What controlled the Findings and Conclusions, and what controls here, is the bogus story concocted by Philos Tech and the Kos to hale Philos & D and the Parks into an Illinois-based court, so remote from their South Korean home base.

<u>contemporaneous</u> written agreements--a fabrication that was needed to support Philos Tech's bid to settle a dispute with the Parks in this United States District Court rather than in a South Korean court. Hence it made its submissions to this District Court with an improper purpose and with a faulty factual basis. That is sanctionable behavior under Rule 11, and Philos Tech is therefore ordered to pay the attorney's fees and expenses incurred by Philos & D and the Parks.[7]

### Rule 11 and Section 1927 and the Attorneys

As to the Attorneys, Philos & D and the Parks seek to invoke both Rule 11 and Section 1927 as the bases for imposition of sanctions. This opinion will address the Section 1927 issues first.

For one thing, Philos & D and the Parks point to the lack of legal support for the claim of conversion advanced in the Complaint. In response Philos Tech argues yet again that conversion is a plausible legal theory for recovery on the facts of this case. To that end Philos Tech first cites to assertedly analogous cases that found a conversion theory applicable (see, e.g., <u>Standard Car Truck Co. v. Consolequip</u>, 00 C 5952, 2001 WL

---

[7] In this Court's judgment such a sanction of fees and costs is both necessary and sufficient to deter Philos Tech and other parties from repeating the behavior exhibited during this litigation. Because Philos Tech brought this action without sufficient factual support from the beginning, it is responsible for the entirety of the defendants' fees and expenses (cf. <u>Divane v. Krull Elec. Co.</u>, 319 F.3d 307, 314 (7th Cir. 2003)).

1665221 (N.D. Ill. Dec. 27); Weiland Tool & Mfg. Co. v. Whitney,
100 Ill. App. 2d 116, 241 N.E. 2d 533 (1st Dist. 1968)). But
those cases are not analogous--in each of them it was only
possession and not ownership of the property at issue that was
transferred (Standard Car Truck Co., 2001 WL 1665221, at *1;
Weiland Tool & Mfg. 100 Ill.App.2d at 127, 241 N.E.2d at 539),
while here both possession and ownership of the Equipment were
transferred to Philos & D (C. ¶6).

In that respect Brodsky v. Frank, 342 Ill. 110, 173 N.E. 775
(1930) is on all fours with this case, as explained in the Facts
and Conclusions (id.), and it shows the clear inapplicability of
the concept of conversion. Philos Tech's counsel quarrels with
that, arguing that the Brodsky conversion holding turned on a
factual and not a legal dispute. That, however, is a total
misreading of that case--listen to this key portion of Brodsky,
342 Ill. at 119, 373 N.E. at 778 (emphasis added)(a portion that,
ironically, Philos Tech's counsel actually quote in their brief):

> If defendants in error purchased the property and
> received it from plaintiff in error voluntarily and
> agreed to pay for it in December, 1925, as alleged in
> the declaration [read: complaint], they had a right to
> appropriate it to their own use, and they were not
> guilty of conversion.

Thus Brodsky found conversion to be an inappropriate vehicle for
recovery even accepting plaintiff's version of the facts.
Brodsky's applicability becomes even more clear from its
discussion of People v. Healy, 128 Ill. 9, 18, 20 N.E. 692, 695

- 17 -

(1889)), a detailed recounting of which is unnecessary.

But Philos Tech's counsel's advancement of an unsound basis on which to seek relief does not necessarily call Section 1927 into play--if that were the case, any unsuccessful Rule 12(b)(6) motion could automatically provide an exception to the "American Rule," under which the norm is for every litigant to bear its own legal fees. Put another way, the fact that a court may be vexed by counsel's disagreement with its analysis does not equate to vexatiousness under Section 1927 just because that disagreement on the part of counsel was mistaken.

Here it cannot fairly be said that counsel for Philos Tech acted with recklessness toward Illinois' conversion law. They presented several Illinois cases that, while distinguishable, bore some similarities to this case, and a nuanced understanding of their facts is required to see why they are inapplicable (see, e.g., Weiland Tool & Mfg.). Moreover, the only directly-on-point Illinois decision that this Court could find was issued over 80 years ago. In sum, the Attorneys did not act vexatiously and unreasonably by bringing Philos Tech's action as a conversion claim.

To turn to the second possible path to Section 1927 liability--that the Attorneys' continued contention that the written Agreements were orally rescinded at their very conception and replaced with a totally different oral understanding was both

factually and legally deficient--that presents a much closer call.  On balance, however, this Court will not pursue that path to its ultimate destination of lawyer liability.

It will be remembered that the Joint Venture Agreement's explicit creation of a joint venture between the Parks and PLS Tech (the South Korean company founded and headed by J. Ko) to form Philos & D has been urged by Philos Tech (the United States corporation headed by J. Ko's son S. Ko) and its Attorneys to have been transmuted somehow into a joint venture between Philos Tech and the Parks.  And some documents do read in that vein: Philos & D's Articles of Incorporation, its business plan and its foreign direct investment papers, all of which named Philos Tech as a cofounder or shareholder of Philos & D (P. Mem. Exs. 1A, 1B, 1C).  In addition, the Attorneys presented some evidence that Philos & D publicly held itself out to be a joint venture with Philos Tech as a partner (P. Supp. Mem. Ex. 14).

To all of this Philos & D responds by pointing to J. Ko's written letter that stated he was canceling the Agreements several months after Philos Tech and S. Ko contend that the Agreements had already been canceled orally--an objective fact totally at odds with S. Ko's and Philos Tech's subjective story. That disconnect between reality and the manufactured "facts" supporting the Attorneys' arguments is readily understood:  S. Ko, J. Ko and the Parks were colluding to make it appear as

though Philos Tech was investing in Philos & D.

Although those trumped-up facts provide no protection against liability for S. Ko and Philos Tech (after all, they were co-conspirators in that scheme who were fully aware of the evidence's dubiousness and of the absence of evidence tying Philos & D's and the Parks' conduct to any Illinois-based involvement on their part), the Attorneys will not be punished for having been duped by a charade propagated by the parties with the aid of lawyers elsewhere. Certainly the Attorneys were entitled to credit their clients' story in the first instance, and when that story was then questioned the Attorneys were provided with claimed evidentiary support--and even though that evidence was then discredited, the record does not reflect either (1) just how and when that came to be known by the Attorneys or (2) whether or how they engaged in a further inquiry of their client in light of that information.[8] We are left then to look solely to suppositions and inferences, and those alone cannot suffice to support a holding that the Attorneys acted

_____

[8] That line was not pursued by Philos & D in support of the present motion. In that respect, that avenue of inquiry need not have been foreclosed by attorney-client privilege considerations, because where--as here--the question of potential lawyer liability for representation of the client is at issue, Ill. S.Ct. Rule of Professional Conduct 1.6(b)(5) permits disclosure by the lawyer of otherwise privileged communications. That provision mirrors ABA Model Rule of Professional Conduct 1.6(b)(5) and is pointedly covered in this District Court's LR 83.51.6(c)(3), which speaks specifically of "defend[ing] the lawyer...against an accusation of wrongful conduct."

vexatiously.

To shift finally to Rule 11 as a potential source of liability on the part of the Attorneys, what has been said as to Section 1927 has major force in the different context of that Rule as well.  Filing an original Complaint in reliance on a client's seemingly plausible representations is nothing more than what lawyers reasonably do every day.  When those representations were then placed in question in this instance, so that Rule 11(b)'s obligation for "an inquiry reasonable under the circumstances" kicked in to require the Attorneys to look into that question, the client (that is, S. Ko as the Attorneys' source of information) obviously had to provide counsel with the story and limited evidentiary support described earlier.

This Court recognizes that this is a close call considering what it has found to be the implausibility of S. Ko's story.  But it is a close call, and as stated earlier, the state of the record calls for the same conclusion as to Rule 11 as has been reached here regarding Section 1927.

Moreover, though this provides only minor support for that conclusion, our Court of Appeals explained a quarter century ago that disagreements among judges as to the merits of an issue can support the reasonableness of a party's arguments for the purposes of Rule 11 (<u>Indianapolis Colts v. Mayor and City Council of Baltimore</u>, 775 F.2d 177, 182 (7th Cir. 1985)).  Here three

South Korean courts have come to the conclusion, on the evidence presented to them, that Philos & D was a joint venture between Philos Tech and the Parks (P. Mem. Exs. 7, 12, 14).[9]

In sum, this Court will not burden the Attorneys with defendants' attorney's fees and expenses. In addition to the preceding analysis, it should be remembered that the defendants themselves helped craft the mosaic of misleading information that the Attorneys relied upon.

### Conclusion

To summarize, Philos & D's motion for sanctions is granted in part and denied in part: It is granted pursuant to Rule 11 as applied to Philos Tech, but it is denied in all respects as applied to the Attorneys. Accordingly Philos Tech is ordered to pay Rule 11 sanctions in the form of the defendants' attorney's fees and expenses, together with a "delay factor" to account for the cost of money, a concept approved by <u>Brandt v. Schal Assocs., Inc.</u>, 960 F.2d 640, 651-52 (7th Cir. 1992) in affirming this Court's application of such a factor under the pre-1993 version of Rule 11. That application remains sound in principle under today's Rule 11. What remains is the need to quantify those

---

[9] It remains for the future to see whether that view will stand up when the substantive issues that this opinion has had no occasion to address are thrashed out before a court having jurisdiction over the disputants (presumably in South Korea), and when that court is presented with this Court's Findings and Conclusions and this opinion together with the evidence relied on in both.

sanctions, and a status  hearing is set for 8:45 a.m. May 14, 2013 to discuss the timing and procedure for that purpose.

_____
Milton I. Shadur
Senior United States District Judge

Date:  May 8, 2013