**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **PHILOS TECHNOLOGIES, INC.,** | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 08 C 7240 |
| | ) | |
| **PHILOS & D, INC.**, et al., | ) | |
| | ) | |
| Defendants. | ) | |

### MEMORANDUM OPINION AND ORDER

This memorandum opinion and order is the final chapter at the District Court level of this lengthy legal drama, although the appeal on the merits has been pending for a goodly period.[1] This chapter ends with an assessment of fees and expenses properly awarded to Philos & D, Don-Hee Park and Jaehee Park (collectively "Philos & D") as a sanction imposed against plaintiff Philos Technologies, Inc. ("Philos Tech").

This Court's September 25, 2012 findings of fact and conclusions of law ("Findings and Conclusions," Dkt. 116) dismissed this action for lack of personal jurisdiction. Later this Court's May 8, 2013 memorandum opinion and order ("Opinion," 943 F.Supp.2d 880) granted Philos & D's motion for sanctions pursuant to Fed. R. Civ. P. ("Rule") 11 and ordered Philos

---

[1] This Court is of course keenly aware of our Court of Appeals' strong preference for dealing with all appellate issues in a single proceeding, so this Court's goal was to resolve the fee issues dealt with here within a considerably shorter time span than has proved possible. Regrettably, the sheer volume of the billing records at issue and the time occupied by the litigants in addressing the complexities involved, exacerbated by a number of mistaken approaches and calculations that required do-overs, have dashed those hopes. At the same time, the current monthly report that this Court has just received from the Court of Appeals has not listed a scheduled oral argument date for the merits appeal, so that a single appellate sitting for that and the likely appeal from today's order might still prove possible.

Tech to compensate Philos & D for defendants' attorney's fees and expenses (together with a "delay factor" to account for the cost of money). For the reasons outlined below, Philos Tech is ordered to pay Philos & D's fees and expenses in the amount of $729,832.72.

## Background

Given the comprehensive factual account provided in the Findings and Conclusions,[2] there is no need to recount in detail the entire history of this dispute. What follows instead in this section is an abbreviated summary of the facts relevant to a determination of properly compensable fees and expenses.

PLS Tech Korea ("PLS Korea") is a South Korean company, founded by Jong Ho Philos Ko ("J. Ko"), that specializes in heat treatment technology (F. ¶ 1). On December 20, 2007 Don-Hee and Jaehee Park (referred to singularly by their first names and collectively as "the Parks") entered into two written agreements (the "Agreements") with PLS Korea to establish a company -- Philos & D -- to manufacture and sell knives and shears using a particular type of surface treatment technology (F. ¶¶ 3-6). Fully eight months later (on August 18, 2008) J. Ko sent Philos & D a letter on behalf of PLS Korea unilaterally purporting to cancel both Agreements (F. ¶ 17).

S. Ko -- J. Ko's son and the sole shareholder in and President of Illinois company Philos Tech -- was not present at the signing of the Agreements, nor was Philos Tech a party to those Agreements (F. ¶ 11). Nonetheless S. Ko brought suit against Philos & D and the Parks in 2008

---

[2] Those Findings and Conclusions will respectively be cited "F. ¶ --" and "C. ¶ --," while the Opinion will be cited "Op. at --," referring to the 943 F.Supp.2d page number, Philos & D's initial petition quantifying fees and costs will be cited "D. Pet. ¶ --," Philos Tech's memorandum opposing that petition will be cited "T. Mem. ¶ --" and Philos & D's reply will be cited "D. Rep. ¶ --." Citations to exhibits attached to those submissions will add the suffix "Ex. --" to the corresponding document.

in this Northern District of Illinois on behalf of Philos Tech.  Philos Tech's Complaint alleged that Philos Tech -- and not PLS Korea -- had entered into a joint venture with the Parks (Dkt. 1 ¶ 15).  Incredibly the Complaint totally omitted any mention of the existence of either PLS Korea or the Agreements.

Unsurprisingly the Parks took exception to Philos Tech's claims and denied the existence of personal jurisdiction over them in this District Court.  In a February 13, 2009 letter to the Honorable William Hibbler (to whose calendar this action was originally assigned), the Parks revealed the existence of the Agreements and denied the existence of any later agreement with Philos Tech (Dkt. 11).  Philos Tech responded by moving for a default judgment, which Judge Hibbler granted based on S. Ko's allegations (Dkt. 25).

Next Philos & D moved to vacate that default judgment based on an asserted lack of personal jurisdiction.  Although Judge Hibbler denied the motion to vacate, our Court of Appeals reversed that ruling and held that Philos & D's method of challenging personal jurisdiction -- through the February 2009 letter -- was acceptable (see generally Philos Tech., Inc. v. Philos & D, Inc., 645 F. 3d 851 (7th Cir. 2011)).  But the Court of Appeals declined to rule on the issue of personal jurisdiction in the first instance, remanding the case to the District Court to do so (id. at 859).

On remand Philos & D resubmitted its motion to vacate (Dkt. 79) and sent a Rule 11 letter, warning its opponents that Philos & D would seek sanctions if Philos Tech did not withdraw the Complaint.  Philos & D there cited the "material misrepresentations and omissions" contained in the Complaint and readvanced in later pleadings, which it argued falsely supported personal jurisdiction in this District.  Despite that shot across its bow, Philos Tech refused to

drop the Complaint, insisting that the Agreements were only provisional in nature and that the controlling agreement was an asserted oral one between Philos & D and Philos Tech.

After the untimely death of Judge Hibbler and ensuing transfer of the case, this Court held an evidentiary hearing to determine the existence of personal jurisdiction. That hearing led to the inevitable conclusion that the purported "oral rescission" of the Agreements never took place, that Philos Tech merely helped to carry out PLS Korea's contractual obligations under the Agreements and that Philos Tech's "evidence" of a joint venture with the Parks merely implemented the parties' joint scam to receive South Korean financial benefits obtainable by companies with a foreign investor (F. ¶¶ 30-39).

In light of its Findings and Conclusions, this Court granted Philos & D's motion to vacate and dismissed the action for want of personal jurisdiction. Following that dismissal Philos & D filed a motion for sanctions against Philos Tech and its attorneys under Rule 11 (as to both Philos Tech and the attorneys) and 18 U.S.C. § 1927 ("Section 1927") (as to the attorneys only). Because -- among other untruths -- Philos Tech falsely claimed that the Parks had contracted with Philos Tech to form a joint venture and failed even to mention the existence of the Agreements, this Court concluded that S. Ko was bent on obfuscation from the very start (Op. at 888 (emphasis in original)):

> So the long and short of it is that Philos Tech fabricated a story about an oral agreement that supposedly superseded the <u>contemporaneous</u> written agreements -- a fabrication that was needed to support Philos Tech's bid to settle a dispute with the Parks in this United States District Court rather than in a South Korean court. Hence it made its submissions to this District Court with an improper purpose and with a faulty factual basis.

That of course is sanctionable behavior, and this Court therefore ordered Philos Tech to pay those attorneys' fees and expenses of its opponents that flowed from the sanctionable

submissions -- which is to say the entirety of the fees and expenses reasonably incurred by Philos & D in this case (<u>id</u>.).  This Court nevertheless gave the benefit of the doubt to Philos Tech's attorneys, assuming that they did not know of their client's falsehoods and therefore declining to impose sanctions against them (<u>id</u>. at 889-91).  After a number of hiccups in the process, both sides have now fully briefed the issue of an appropriate fee award, rendering the  matter ripe for resolution.

## Standard of Review

Rule 11 sanctions aim primarily to deter future rule violations, and the scope of such sanctions must therefore be limited to what is necessary to deter sanctionable conduct (Rule 11(c)(4)).  But "[c]ompensation and deterrence are not only not mutually exclusive, they are sometimes compatible" (<u>Brandt v. Schal Assocs., Inc.</u>, 960 F. 2d 640, 646 (7th Cir. 1992)), and a district court may therefore impose sanctions by ordering a rule violator to make good its opponent for the harm caused by its violation (see, among other cases, <u>Divane v. Krull Elec. Co.</u>, 319 F. 3d 307, 314 (7th Cir. 2003)).

In a case such as this one, in which a complaint was filed and pursued in bad faith from the get-go, a reasonably accurate measure of the harm Philos Tech has caused is what it has cost its opponent (<u>Brandt</u>, 960 F. 2d at 647).  Sanctions must be limited to those fees and expenses "directly resulting from the violation" (Rule 11(c)(4)) -- but that requirement poses no obstacles where, as here, <u>all</u> expenses borne by Philos & D stem from Philos Tech's sanctionable Complaint and its pursuit thereof.  Even when considering fees and expenses directly resulting from sanctionable conduct, a court "must ensure that the time was reasonably devoted to the litigation" (see <u>Szopa v. United States</u>, 460 F. 3d 884, 886 (7th Cir. 2006)).

**Fees Incurred on Appeal and in South Korean Litigation**

Before turning to the meat of Philos & D's petition -- fees and expenses generated in litigation before this District Court -- this opinion must first address a significant threshold matter.  Philos & D has included in hits petition substantial fees (totaling $280,479.27) incurred in litigating this case before our Court of Appeals and in defending itself in South Korean proceedings brought against it to enforce the previously-awarded judgment.  Philos & D argues that those expenses resulted directly from Philos Tech's Rule 11 violation and are therefore compensable.

That contention may perhaps have force as a matter of pure logic, but it remains settled law that this Court may not award fees under Rule 11 for expenses incurred on appeal -- and that reasoning would appear to apply a fortiori to fees incurred in a separate action in a foreign court.  Cooter & Gell v. Hartmarx Corp, 496 U.S. 384, 406 (1990) says as much as to appellate expenses:

> On its face, Rule 11 does not apply to **a**ppellate proceedings. Its provision allowing the court to include "an order to pay to the other party or parties the amount of the reasonable expenses incurred because of the filing of the pleading, motion, or other paper, including a reasonable attorney's fee" must be interpreted in light of Federal Rule of Civil Procedure 1, which indicates that the Rules only "govern the procedure in the United States district courts." Neither the language of Rule 11 nor the Advisory Committee Note suggests that the Rule could require payment for any activities outside the context of district court proceedings.

> *            *            *

> We believe Rule 11 is more sensibly understood as permitting an award only of those expenses directly caused by the filing, logically, those at the trial level.

As Philos & D points out, the application of Cooter & Gell's clear holding here is undercut somewhat by a significant factual divergence between that case and the matter before this Court:  Here the disputed fees were not "expenses incurred in defending the [Rule 11] award

on appeal," but rather in defending the <u>merits</u> of this Court's ruling on the issue of personal jurisdiction. Certainly those appellate expenses might reasonably be viewed as having been incurred "because of the filing of the [Rule–violative] pleading" by Philos Tech in a more direct way than the appellate expenses at issue in <u>Cooter & Gell</u>.

But on balance this Court finds that possibility to be overridden by the literal breadth of the quoted <u>Cooter & Gell</u> language and by the key fact that our Court of Appeals has ample power to deal with appellate expenses under its own rules if it were to find the appeal "frivolous" in the legal sense (see Fed. R. App. P. 38 and the discussion in <u>Cooter & Gell</u>, 496 U.S. at 406-07 immediately following the already-quoted portion of that opinion). Indeed, our Court of Appeals has itself lent strength to such reading of Rule 11, holding that "[w]e cannot, however, award sanctions under Rule 11 of the civil rules; unlike Rule 38 of the appellate rules, it is inapplicable to appellate proceedings" (<u>DDI Seamless Cylinder Int'l, Inc. v. Gen. Fire Extinguisher Corp.</u>, 14 F. 3d 1163, 1165 (7th Cir. 1994)).

Philos & D nonetheless insists that this Court has power to award fees under Rule 11 for legal efforts expended on appeal. In support of that proposition it cites a single footnote in <u>Chambers v. Nasco</u>, 501 U.S. 32, 42 n.8 (1991) that says, "In the case of Rule 11, a violation could conceivably warrant an imposition of fees covering the entire litigation, if, for example, a complaint or answer was filed in violation of the Rule." Read in context, however, that footnote merely establishes that a wrongly-filed complaint could justify imposition of fees covering the entire district court litigation, rather than merely the fees incurred in answering that complaint. That scenario of course is precisely what has occurred here. <u>Chambers</u> has nothing at all do with a district court's authority to award fees incurred on appeal, and Philos & D's inability to produce

a single case in the wake of <u>Cooter & Gell</u> in which a district court awarded appellate fees under Rule 11 reinforces that reading of the case.

Oddly enough, Philos & D's position is somewhat stronger as to expenses incurred in defending itself in South Korean enforcement proceedings. Those proceedings are obviously not subject to Fed. R. App. P. 38, and that basis for the <u>Cooter & Gell</u> holding therefore does not apply here. If this Court were to consider Rule 11's language in isolation, it might be tempted to find that the Korean fees were compensable: In a very real sense expenses incurred in those proceedings "directly result[ed] from the violation" at issue here, as they were direct attempts to enforce a judgment of this District Court.

But this Court will not ignore <u>Cooter & Gell's</u> clear instruction that Rule 11 permits an award only of expenses "at the trial level." <u>Brandt</u>, 960 F. 2d at 650 provides a further gloss on that opinion:

> The Court unequivocally stated in <u>Cooter & Gell</u> that "the central purpose of Rule 11 is to deter baseless filings in district court." <u>Id</u>., at 2454. Disallowing inclusion of the costs of appeal would not directly frustrate this purpose, but disallowing the costs of Rule 11 proceedings in district court would.

So too, disallowing the expenses of a foreign enforcement proceeding will have a negligible effect on the ability of Rule 11 to deter baseless filings in the district court. Both <u>Brandt</u> and <u>Cooter & Gell</u> therefore militate strongly against the recapture of fees and expenses incurred in the South Korean proceedings, despite the fact that Philos Tech's sanctionable conduct was in a very real sense the but-for cause of those expenses.

That understanding of Rule 11's reach also accords with common sense: It would be a topsy-turvy world in which Rule 11 sanctions extended to proceedings in a foreign nation but could not stretch to our own Court of Appeals. Philos & D are of course welcome to avail

themselves of whatever sanctions or fee-shifting provisions a Korean court may see fit to impose, but this Court will not invoke Rule 11 to police matters filed in foreign courts.

In sum, the $185,750.50 in fees and expenses incurred by Philos & D on appeal[3] and the $94,728.77 it incurred in the Korean proceedings (as calculated in its reply submission) will not be included in the final award here. This opinion turns, then, to assessing the reasonableness of fees and expenses generated by litigation at this District Court level.

### Reasonableness of District Court Fees and Expense

On that score this Court has frequently had occasion to speak to the problems posed by the task thrust on judges in this type of proceeding (see, e.g., Koval v. PaineWebber Housing & Healthcare Funding, Inc., 128 F.R.D. 654 (N.D. Ill. 1989)). There is surely a great deal of force to the idea that if fee-shifting is decided to be a proper remedy for a Rule 11 violation in a case such as this one, that shifting ought to be total. But unless and until that approach gains approval from the rulemakers in this area, this Court will continue to discharge the task marked out by Jardien v. Winston Network, Inc., 888 F. 2d 1151, 1160-61 (7th Cir. 1989) and like cases.

Having said that, however, this Court has taken the view that unless there is some real reason (and not just carping) to support a finding of unreasonableness in the scope and amount of fees incurred on Philos & D's behalf and paid for by Philos & D without protest, the amount of those fees should be considered presumptively reasonable (accord, People Who Care v. Rockford Bd. of Educ., 90 F. 3d 1307, 1313 (7th Cir.1996)). For as Cintas Corp. v. Perry, 517 F. 3d 459,

---

[3] While $185,750 generally appears to be the number claimed as "fees and expenses incurred on appeal" by Philos & D (see D. Rep. Ex. A079, A010), at one point Philos & D appears to be asking for the greater figure of $186,944.29 (see D. Rep. 8). With those expenses having been disallowed entirely, the precise amount requested is unimportant.

469 (7th Cir. 2008) makes clear, "the best evidence of whether attorney's fees are reasonable is whether a party has paid them."

Reasonableness of Philos & D's Attorneys' Hourly Rates

In this case the hourly rates that Philos & D evidently found acceptable ranged from $645 per hour (for Winston & Strawn partner John Moss ("Moss")) down to $310 per hour (for Schiff Hardin associates Ann MacDonald and Brooke Schaefer).  While hardly small change, those rates are in this Court's experience entirely consistent with rates charged by attorneys at other large Chicago firms.  Philos & D also offers affidavits by Moss (Dkt. 191) and Schiff Hardin partner Allan Horwich (Dkt. 190) affirming that the hourly rates charged to Philos & D are consistent both with their own usual rates and with those of the Chicago market.

Philos Tech provides no evidence that directly contradicts those points, but it nonetheless argues that the rates charged in this case are unreasonable.[4]  Its central argument boils down to a contention that because the hourly rates of its opponents' attorneys are higher than that of its own attorneys, that renders the higher rates unreasonable.  As a proposed cure for that purported "defect," Philos Tech goes so far as to suggest a 50% reduction in the higher billed rates to "make defendants' rates similar to Philos Tech's rates."  But even though the rates charged by the Winston & Strawn and Schiff Hardin lawyers (and, not incidentally, paid for at those rates by

---

[4] Philos Tech also complains that Philos & D chose to retain Washington, D.C. lawyer Moss rather than a local attorney.  Moss explains that Philos & D did so primarily because of his prior work representing a South Korean company (Dkt. 191 ¶ 9), and such expertise is of course a reasonable basis on which to hire counsel.  Moss has also demonstrated that his rates are equal to or slightly below those of his Chicago colleagues and that his travel to Chicago for this matter was minimal.  Philos & D was certainly entitled to select an attorney with special expertise in working on behalf of South Korean corporations, even if that expertise ultimately added a negligible amount to the financial burden borne by Philos Tech.

Philos & D) might perhaps tend to trigger some judicial ruefulness as to having taken the vows of poverty to go on the bench, Philos Tech's challenge on that score necessarily fails.

Lawyers are not fungible (shades of Orwell's <u>Animal Farm</u>!). When this Court left private practice to go on the bench, the hourly rate that it had then been charging to and receiving from its clients (although obviously beggared by the explosion in such rates that has taken place in the intervening decades) was in the top range of the rates then being billed by Chicago lawyers. As such, it would have been well in excess of the "norm" that any generalized survey of average hourly rates would have produced. But the relevant <u>market</u> for this Court's services in the numerous areas of practice in which it had demonstrated the desired quality of representation to the satisfaction of its clients was represented by the mutual agreements reached with those clients as to the price of its services. At least in the absence of any indication that such agreements represented an unreasonable decision on the part of the clients, the agreed-upon rate was by definition the proper measure of a reasonable fee.

Just so here. Philos & D, with the universe of lawyers available to it, selected those two firms (with no reason to anticipate at the time of selection that a court would ultimately see fit to shift the cost of those choices to its opponent) and have paid those firms' fees as billed. That situation calls, really a fortiori, for application of the principles well articulated by our Court of Appeals in <u>Gusman v. Unisys Corp.</u>, 986 F. 2d 1146, 1150–51 (7th Cir. 1993):

> Recall that the objective is to find the reasonable fee for the work. When the lawyers sell their time in the market, the market provides the starting point: the lawyer's hourly rate. <u>Eddleman v. Switchcraft, Inc.</u>, 965 F. 2d 422, 424–25 (7th Cir.1992). Lawyers do not come from cookie cutters. Some are fast studies and others require extra preparation. Some are more nimble on their feet and apt to achieve better results at trial. Some have deeper insight and in a few hours may find ways to prevail (or to curtail costly discovery) that will elude their colleagues. Clients are willing to pay more, per hour, for these better lawyers. A $225 per hour lawyer may end up costing less than a $150 lawyer for the same

result or may produce better results for the same total bill. Markets recognize these truths; judges must too. Only an assumption that all lawyers are identical could support the averaging approach, under which all lawyers in a division of the court receive the same hourly fee.

* * *

Our recent cases have stressed that the best measure of the cost of an attorney's time is what that attorney could earn from paying clients. For a busy attorney, this is the standard hourly rate. If he were not representing this plaintiff in this case, the lawyer could sell the same time to someone else. That other person's willingness to pay establishes the market's valuation of the attorney's services.

* * *

A judge who departs from this presumptive rate must have some reason other than the ability to identify a different average rate in the community. A judge might say, for example, that the lawyers did not display the excellence, or achieve the time savings, implied by their higher rates. A judge might conclude that the plaintiff did not need top-flight counsel in a no-brainer case. But no claim along these lines has been made.

Accord, quoting Gusman, here is People Who Care, 90 F. 3d at 1313:

Once an attorney provides evidence of his billing rate, the burden is upon the defendant to present evidence establishing "a good reason why a lower rate is essential."

Here there is the best of reasons why no rate lower than the actual Winston & Strawn billing rates[5] is "essential":  Any such reduction would actually defeat the salutary purposes of Rule 11, for anything less would force defendants -- the innocent victims of Philos Tech's Rule 11 violations -- to bear part of the cost thrust on them by those very violations.  And Philos Tech has provided no substantive reasons why the services provided by the attorneys of Winston &

---

[5]  Philos Tech's response raises the "lawyerly" argument (the adjective is not used here in a positive sense) that the declaration of Winston & Strawn attorney Moss (D. Pet. Ex. B ¶ 9) states only that the charged rates were "consistent with" rather than "identical to" those charged to other clients (T. Mem. 6).  Such semantic nit-picking gives support to the public's worst opinions of the legal profession, but in any case is made irrelevant by the more detailed explanation of Winston & Strawn's billing rates in Moss's second declaration of January 17, 2014 (Dkt. 191).

Strawn and Schiff Hardin were deficient, pointing instead merely to a comparison with the rates charged by their own attorneys.

Winston & Strawn's attorneys also agreed to discount their usual hourly rates substantially by essentially freezing those rates at 2011 levels for both 2012 and 2013 (D. Ex. A). By Philos & D's estimates that discount produced $42,414 in savings, further bolstering the argument that the charged rates were reasonable (see D. Reply Ex. A079). Given that the rates charged by Philos & D's attorneys reflected their usual market rates and were in fact discounted, and that Philos Tech has utterly failed to provide meaningful specific objections to the appropriateness of those rates, this Court finds the hourly rates charged by Winston & Strawn and Schiff Hardin to be entirely reasonable.

Reasonableness of Hours Expended and Expenses Incurred

Of course establishing reasonable hourly rates does not end the discussion. There remains the substantially more difficult task of reviewing for reasonableness the actual hours spent and expenses incurred in pursuing this matter. Toward that end this Court has exercised its best efforts -- inherently an imperfect task in reviewing lawyers' work from the outside and in retrospect -- to determine a reasonable fee under all the circumstances. Having reviewed at some length the filings submitted by all parties, this Court finds nothing unreasonable in either the number of hours or the expenses incurred by attorneys for Philos & D. In reaching that conclusion this Court has considered carefully both general objections raised by Philos Tech and several specific complaints.

Philos Tech's first general objection relates to the sheer mass of hours accumulated by Philos & D's counsel: Philos & D reports nearly twice as many hours expended by its attorneys as by Philos Tech's. Philos Tech insinuates (but does not actually argue) that Philos & D's

- 13 -

lawyers could not reasonably have spent twice the number of hours on this matter as its own

(T. Mem. 8).[6]  Philos & D responds in part that two of its opponent's lawyers were employed

directly by Philos Tech and that their efforts were not fully reflected in Philos Tech's hourly

computations.  Philos Tech in turn argues that those attorneys worked on matters other than the

present case and that Philos & D therefore overstates the impact of those two in-house lawyers.

In any event Philos & D's attorneys undoubtedly dedicated more time to the case, and produced a

bill correspondingly greater, than attorneys for Philos Tech.

But the exact size of the disparity is ultimately irrelevant, and there is not a hint that the

Philos & D people were engaged in makework activity, seeking somehow to bilk their client.  As

Classic Components Supply, Inc. v. Mitsubishi Elecs. Am. Inc., 841 F. 2d 163, 165 (7th Cir.

1988) among others makes clear, "[s]hallow claims may require costly replies."  It is far easier to

make false assertions in a complaint than to disprove those assertions, so that a disparity in the

hours billed between Philos & D and Philos Tech does not render Philos & D's fees

unreasonable.  This Court, like our Court of Appeals, has "little sympathy for the litigant who

fires a big gun, and when the adversary returns fire, complains because he was only firing

blanks" (Brandt, 960 F. 2d at 648).   Notwithstanding Philos Tech's purported horror at the

mountain of hours accumulated by its opponent, it must bear the cost of its own sanctionable

conduct.

---

[6] Philos Tech insists that it "is not suggesting that defendants' fee and expense petition is
unreasonable because defendants' counsel spent far more time on this case than plaintiff's
counsel did" but rather "because it fails to explain why defendants' counsel did what they did"
(T. Mem. 8).  But that generalized grievance cannot win the day for Philos Tech, for "[i]f counsel
submit bills with the level of detail that paying clients find satisfactory, a federal court should not
require more" (In re Synthroid Mkt'g Litig., 264 F. 3d 712, 722 (7th Cir. 2001)).  And here
counsel submitted the same billing statements that a paying client would receive.

Philos Tech further argues that it should not be responsible for fees billed to Philos & D but not yet paid. In claimed support of that novel proposition Philos Tech cites an online article on the difference between accrual and cash accounting and suggests that "a receivable of this size and vintage might well be deemed uncollectible" (T. Mem. 6).  Not only does Philos Tech fail to provide any legal justification for that unusual idea, but it ignores the key fact here:  Whatever accounting practices Winston & Strawn ought to use, Philos & D remains legally obligated to pay its outstanding bill, and there is nothing to suggest that the bill was piled up in an effort to punish Philos Tech rather than as a legitimate effort by Philos & D's retained counsel to serve their client.  If Philos & D has thus far struggled to fulfill that obligation, or has merely delayed doing so, that does not reduce the deterrent effect on future rule violators of a full fee award or the compensatory benefit to Philos & D.  Had Philos & D incurred those attorneys' fees without the ability or intention to pay the bill as charged, that might undermine the presumption of reasonableness accorded to fees incurred by a paying client.  But Philos Tech has provided no evidence for such a conclusion other than the slow repayment of some portion of Philos & D's debt.

Beyond those general objections, Philos Tech fails in its effort to identify individual billing entries that clearly extend beyond what is reasonable.  That renders this Court's task somewhat more difficult, for "the more specific the objections to a fee application are, the more specific the findings and reasons for rejecting those objections can be" (Divane, 319 F. 3d at 317 (internal quotation marks omitted)).

Moreover, the few specific issues raised by Philos Tech have been adequately addressed by Philos & D's reply.  Those alleged deficiencies include a lack of biographical information for several of Philos & D's attorneys and a lack of specificity in some billing details.  Pointing to a

July 24, 2012 bill for "Expert, Consultation and Evaluation Fees," for instance, Philos Tech wishes to know for what purpose the expert was hired. And in an October 26, 2012 entry for travel fees, air courier, business meals and color copies, Philos Tech asks: "Who traveled where? What was shipped to whom, and why wouldn't regular mail have sufficed? Who ate what? When? Why? What was copied? Scanned? Why did it need to be copied in color?" Inquiring minds, it would seem, want to know.

Many of Philos Tech's complaints -- such as the lack of biographical detail and inadequate explanation for Philos & D's purpose in retaining an "expert" -- have been adequately addressed by Philos & D in its reply submission. Greater biographical detail has been offered, and Philos & D has convincingly argued that the "expert consultation" fees resulted from its need to hire an investigator to procure documents, given the lack of formal discovery before the evidentiary hearing in this case.

Other nit-picking gripes need not be addressed at all. Attorneys certainly are not required to identify "who ate what" nor "why" the food was eaten (though that latter question does seem to answer itself). And such other minutiae as identifying on a document-by-document basis how copying costs were incurred would be a waste of time for all concerned -- not the least for this Court, which has more than once had occasion to observe that the resource in shortest supply in our legal system is the judge's time.[7]

---

[7] Does Philos Tech really want Philos & D's people to go back and spend the time and effort to look into and respond to such nits -- and of course, in the familiar but wasteful generation of fees on fees, to pay for the cost of doing so? Oscar Wilde had it right in Lady Windermere's Fan:

> In this world there are only two tragedies. One is not getting what one wants, and the other is getting it.

Nonetheless Philos & D has offered up the facts that it required color copies for evidentiary hearing exhibits and that its copying charges were 8 cents per page for black and white copies and 80 cents per page for color copies. In short, Philos & D has adequately addressed all of Philos Tech's reasonable objections to individual billing entries, as well as the several unreasonable objections discussed above.

As for Philos Tech's asserted grievance that its opponent's bills generally lack sufficient detail or explanation, that too is without merit. Indeed that contention by Philos Tech ignores the wealth of billing information that Philos & D has provided -- including 67 pages of detailed billing entries (A012-A078), that adequately describe the nature of the work performed and enable a reviewer to observe the general contours of the litigation.

More importantly, Philos & D has itself evidently found that billing format acceptable, and as earlier quoted from <u>Synthroid Mkt'g</u>, 264 F. 3d at 722, "[i]f counsel submit bills with the level of detail that paying clients find satisfactory, a federal court should not require more." Philos Tech provides no reason to undermine that presumption of validity here, and in any case the billing records provide sufficient detail to substantiate the reasonableness of the attorneys' billing judgments.

Finally, both Schiff Hardin and Winston & Strawn wrote off significant fees in this matter. Winston & Strawn offered a reduction in its hourly rates and also wrote off hours, leading to a total reduction of fees in the amount of $152,551 (D. Reply Ex. A079). For its part, Schiff Hardin wrote off $8,598.87 (<u>id</u>.). Those exercises of billing judgment provide further support for, though of course not conclusive evidence of, the reasonableness of Philos & D's petition.

In sum, on the strength of the billing records provided and its own independent review of the hourly rates charged, expenses incurred and hours expended on this matter, this Court finds Philos & D's request for fees and expenses incurred in this District Court entirely reasonable. Philos Tech is therefore ordered to pay its opponent the full requested sum of $705,392.00.

### Cost of Delay

Philos Tech has had more success in arguing against Philos & D's computation of the cost of delay in its obtaining recapture of the fees and expenses involved. In response to Philos Tech's well-founded objection, Philos & D recalculated its proposal for an appropriate delay factor -- a recalculation that this Court's recent March 17, 2014 memorandum opinion and order found also to be based on incorrect methodology. But Philos & D's newly submitted third try has finally hit the mark. Rather than calculating the delay factor from the time of billing (as Philos & D did in its petition) or from the time retainer funds were placed into an escrow account for the benefit of its attorneys (as was done in the reply), Philos & D's final effort correctly calculates interest from the moment that funds were actually paid to its attorneys for services rendered.[8]

That correct calculation yields a delay factor of $24,440.72. Philos Tech is therefore ordered to pay that additional sum to account for the cost of money to Philos & D, a concept employed by this Court in the Rule 11 context and then upheld on appeal in <u>Brandt</u>, 960 F. 2d at 651-52.

---

[8] Fees incurred on appeal or in Korean proceedings are of course not included in the interest calculations, because as discussed above those fees are not properly compensable under Rule 11.

**Fees on Fees**

Philos Tech also objects to an award of "fees on fees" -- that is, fees incurred in preparing and litigating the fees petition -- based on the "confusing, underdeveloped and contradictory nature of defendants' fees petition" (T. Mem. 5). While Philos Tech overstates the extent of the petition's faults, it is certainly true that there were a number of errors identified and corrected in Philos & D's reply submission -- errors graphically (and helpfully) highlighted in the "redlined" document provided by Philos & D. Philos & D was also forced to provide significantly more information in its reply than it had included in its petition, including the earlier-mentioned biographical details and the explanation as to why it chose to retain Washington, D.C.-based counsel and to hire a private investigator.

Those deficiencies justify a reduction in the "fees-on-fees" component of the ultimate award to Philos & D, for Philos Tech need not foot the bill for Philos & D's attorneys work in correcting their own errors. Those failings, however, are mitigated somewhat by Philos Tech's apparent refusal to bring those errors to its adversary's attention despite Philos & D's attempts to identify and address objections before submitting its petition (Dkt. 191 ¶¶ 4-6).

Accordingly this Court orders Philos & D promptly to submit to Philos Tech a final accounting of the time spent in correcting the errors in its own petition, with a view toward excluding those hours from a final fees-on-fees calculation. Two points should be made in that respect:

1.      To minimize any fees-on-fees-on-fees add-on, counsel for the parties are urged to try to work out that addition on an informal conference basis (both to minimize the time required and, relatedly, to avoid costlier written submissions).

2.      Because the remaining determination of fees on fees will involve

comparatively smaller numbers, while added time delays will keep the

clock ticking for delay-factor purposes, this opinion will order current

payment of the amount due exclusive of fees on fees, while contemplating

the issuance of a hopefully brief further opinion when the fees-on-fees

determination is made.

### Effects of Events in South Korea

In a final bid to avoid bearing the costs of its own misconduct, Philos Tech calls attention

to developments in South Korea to argue that "a full sanctions award may well be excessive"

(T. Mem. 11).  Philos Tech acknowledges that there have been no new South Korean court

decisions related to this matter since the imposition of sanctions but announces that the Parks

now face criminal perjury charges in South Korea (id. at 10) -- charges that apparently stem from

the same testimony that this Court previously found credible (or at least less incredible than that

of its opponents).  And Philos Tech also reiterates that the South Korean courts that have heard

the Parks testify apparently believe S. Ko rather than the Parks -- for the time being, in any case.[9]

None of those developments alters the appropriateness of sanctions in this case.  South

Korea's courts (and its prosecutors) are of course free to weigh the credibility of the various

players in this drama as they see fit.  But their judgment has no effect on this Court's own earlier

---

[9]  Philos Tech argues in addition that full sanctions are inappropriate because S. Ko relied
on legal advice he received from his South Korean attorney regarding contract interpretation.
But the sanctions imposed in this case resulted not from improper legal conclusions but rather
from S. Ko's false and misleading factual statements.  Any legal advice that S. Ko may have
received could well have prompted him to tailor those false statements to fit what he was told
about the applicable legal principles -- and for that and other reasons, any such claimed legal
advice is irrelevant.

credibility determination -- particularly given that neither any South Korean court decision nor the perjury indictment represents final judgments on the merits. In any case, those intermediary determinations in a foreign jurisdiction do not impact this Court's earlier ruling that full sanctions are appropriate.

## Conclusion

Judgment is ordered entered in favor of Philos & D and against Philos Tech in the sum of $729,832.72. Because this Court has determined that there is no just reason for further delay, it holds that amount to be a final and enforceable judgment, and Philos D is ordered to pay it forthwith. Lastly, in accordance with other aspects of this opinion Philos & D and Philos Tech are ordered to confer promptly with a view to determining the additional obligation for "fees on fees."

Milton I. Shadur
Senior United States District Judge

Date: April 8, 2014